UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELISA RENEE FISHER,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>                Defendant. | CASE NO. 2:15-CV-00716-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff, Elisa Renee Fisher,[1] filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of her application for Social Security Disability Insurance Benefits and Supplemental Security Income Benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 7.

---

[1] Subsequent to Plaintiff's initial application for SSI and DIB benefits, Plaintiff changed her name to Elisa Renee Hughley.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's residual functional capacity by failing to properly account for all the material limitations identified by Plaintiff's examining psychologist. As a result, the ALJ also erred in evaluating Plaintiff's ability to engage in past relevant work, or in other work existing in substantial numbers in the national economy. Therefore, this matter is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Order.

## PROCEDURAL& FACTUAL HISTORY

On July 24, 2007, Plaintiff filed an application for Supplemental Security Income Benefits ("SSI"), and on August 6, 2008, Plaintiff filed an application for Disability Insurance Benefits ("DIB"). *See* Dkt. 12, Administrative Record ("AR") 197, 205. In her applications, Plaintiff alleged she became disabled on December 31, 2003, due to posttraumatic stress disorder, anxiety, depression, borderline personality disorder, irritable bowel syndrome, back pain and right hand pain. *See* AR 197, 205, 232, 245. Plaintiff's applications were denied upon initial administrative review on December 3, 2008, and on reconsideration on May 18, 2009. *See* AR 87-93, 97-101. A hearing was held before ALJ Mattie Harvin-Woode on January 10, 2011, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 30.

On January 27, 2011, ALJ Harvin-Woode found Plaintiff was not disabled within the meaning of Sections 216(i) and 223(d) of the Social Security Act. AR 24. Plaintiff's request for review of ALJ Harvin-Woode's decision was denied by the Appeals Council on March 29, 2012, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On June 4, 2012, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. AR 826.

On March 13, 2013, the Hon. Brian A. Tsuchida found ALJ Harvin-Woode erred by improperly rejecting the opinions of Anselm Parlatore, M.D. and Cate Lorenz, MS. LMHCA, concerning limitations in Plaintiff's pace, persistence, and concentration. *Fisher v. Colvin*, 2:12-cv-938-BAT, (W.D. Wa. 2012). Judge Tsuchida entered an order reversing and remanding the case to address whether, for purposes of Plaintiff's Title II DIB application, the mental health evidence subsequent to Plaintiff's date last insured "are relevant to the ALJ's evaluation of conditions present prior to the expiration of a claimant's insured status." *Id.* The ALJ was also instructed to: 1) determine "whether Ms. Fisher is entitled to benefits based on her Title XVI [SSI] application;" 2) reevaluate the opinions of Anselm Parlatore, M.D. and Cate Lorenz, MS., LMHCA concerning Plaintiff's concentration, persistence, and pace limitations; 3) reexamine Plaintiff's testimony at the ALJ's discretion; and 4) reevaluate Plaintiff's residual functional capacity and proceed to Steps Four and Five of the sequential evaluation, as appropriate. *Id.*[2]

A second hearing was held before ALJ Tom Morris[3] on December 18, 2014, and he issued a new decision on January 9, 2015, again finding Plaintiff was not disabled within the meaning of Sections 216(i) and 223(d) of the Social Security Act. AR 731, 748. On May 11, 2015, Plaintiff filed a second complaint in this Court seeking judicial review of the Commissioner's decision on remand.

---

[2] Plaintiff has not challenged the ALJ's resolution of these issues on remand. Based on the Court's review of the ALJ's decision and the whole record, the Court believes the ALJ properly addressed each of the issues raised in Judge Tsuchida's Order. Plaintiff's assignments of error in this case concern non-exertional limitations not previously included in ALJ Harvin-Woode's original residual functional capacity finding. Accordingly, the ALJ did in fact comply with the Court's Order and reevaluated the original residual functional capacity finding.

[3] Unless otherwise specified, any references to the "ALJ" or the "ALJ's decision" in this order refer to ALJ Morris and his decision dated January 9, 2015.

Plaintiff argues the ALJ's decision should again be reversed and remanded for further proceedings, because the ALJ erred by: (1) rejecting or otherwise failing to account for all the material limitations found by Plaintiff's examining psychologist; and (2) failing to incorporate all of Plaintiff's credible limitations into her residual functional capacity, resulting in an erroneous finding at Steps Four and Five of the sequential evaluation. Dkt. 14, p. 1.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## **DISCUSSION**

I.  Whether the ALJ Properly Accounted for All the Material Limitations Found by Dr. Sylvia Thrope.

Plaintiff argues the ALJ erred by failing to incorporate all the material limitations contained in Dr. Sylvia Thorpe's opinion in the Residual Functional Capacity ("RFC") finding. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") [SSR] 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step

five to determine whether he or she can do other work. *See id.* It thus is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

Dr. Thorpe performed a psychological/career assessment of Plaintiff in October, 2006, and offered opinions concerning Plaintiff's mental limitations. AR 481-85. Dr. Thorpe opined Plaintiff had "cognitive and memory limitations" and a "Grade 6-7 academic skill level." AR 484. Dr. Thorpe also recommended Plaintiff "should be in a low-stress job environment with a simple routine and gentle coworkers." *Id.* The ALJ found the opinion of Dr. Thorpe was "well-founded", TR 730, and included the following non-exertional limitations in the RFC:

> [Plaintiff] is capable of unskilled routine tasks with customary breaks and lunch. There can be *occasional collaborative tasks with coworkers*. There can be occasional contact with the public for work tasks. There should be an emphasis on occupations duties [sic] dealing with things objects [sic] rather than people. The work should be low stress, defined as requiring only *frequent decision-making*.

AR 725 (emphasis added). Plaintiff argues: 1) the ALJ did not explain how a limitation of "occasional collaborative tasks with coworkers" accounted for Dr. Thorpe's opinion limiting Plaintiff to work with "gentle coworkers;" and 2) the ALJ did not explain how "frequent decision making" accommodated Dr. Thorpe's opinion limiting Plaintiff to a "low-stress job environment." *See* AR 27, 484.

ORDER ON PLAINTIFF'S COMPLAINT - 5

A. *"Gentle Coworkers"*

Dr. Thorpe recommended Plaintiff be restricted to a "low-stress job environment with a simple routine and gentle coworkers," but did not provide a definition or explain what constitutes a "gentle" coworker. AR 484. Dr. Thorpe did state the limitations were appropriate due to Plaintiff's ongoing risk of "assaultiveness and verbal abusiveness" to others, and that Plaintiff would be able to perform such jobs as "cook, mail room, housekeeping, production, grocery check-out clerk, [and] retail." *Id.* The ALJ, however, does not provide the rationale for translating "gentle coworkers" to the ALJ's subsequent finding Plaintiff was capable of "occasional collaborative tasks with coworkers." AR 725. Dr. Thorpe's "gentle coworker" limitation may reasonably be read to mean Plaintiff may have *contact* with coworkers. But, the ALJ did not explain how the "gentle coworkers" limitation translates to Plaintiff can *participate* in "occasional collaborative tasks *with* coworkers." AR 484 (emphasis added). Moreover, the ALJ does not explain the source of the "occasional collaborative tasks with coworkers" limitation, or otherwise cite evidence in the record to support it. *See, e.g.*, *Betts v. Colvin*, 531 Fed. App'x 799, 800 & n. 1 (9th Cir. 2013) ("[T]he ALJ's RFC assessment was not consistent with the limitations identified by Dr. Van Eerd . . . and the ALJ offered no explanation.").

The Commissioner argues the ALJ was entitled to translate Dr. Thorpe's "gentle coworker" restriction into a concrete limitation. *Rounds v. Commissioner of Social Security Administration*, __ F.3d__, 2015 WL 4620150 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 9th Cir. 2008). "The ALJ is responsible for translating and incorporating clinical findings into a succinct [residual functional capacity]." *Rounds*, ___F.3d ___, 2015 WL 4620150, at *6. In other words, when a medical opinion is not expressed in terms of concrete functional limitations, an ALJ is allowed to "translate" the medical opinion into

concrete limitations consistent with that opinion. *See Stubbs-Danielson* 539 F.3d at 1174. However, an ALJ cannot translate clinical findings in a vacuum. The Ninth Circuit has indicated an ALJ may properly translate the non-specific limitations of one physician by using the concrete limitations opined to by another acceptable medical source. *See Stubbs-Danielson*, 539 F.3d at 1174 ("The ALJ translated Stubbs-Danielson's condition . . . into the only concrete restrictions available to him—*[The State Agency Medical Consultant's] recommended restriction* to 'simple tasks.'") (emphasis added). *See also Betts*, 531 Fed. App'x at 800; *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 F.App'x 15, 17-18 (9th Cir. 2012). In this case, the ALJ and the Commissioner did not cite, nor can the Court find, any acceptable medical source's opinion or clinical findings in the record consistent with the limitation of "occasional collaborative tasks with coworkers." Without such evidence, and without providing the rationale for including the restriction, the ALJ's use of this restriction as a substitute for Dr. Thorpe's "gentle coworkers" limitation is without support and was error. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); SSR 86-8, 1986 WL 68636.

Thus, the ALJ's finding that Plaintiff was limited to "occasional collaborative tasks with coworkers" was not supported by substantial evidence. Moreover, as discussed in Section II, below, an error in the residual functional capacity finding necessarily impacts the ALJ's findings at Step Four and Step Five of the sequential evaluation. Therefore, the ALJ's error was not harmless, and requires remand for further proceedings. [4]

---

[4] If, alternatively, the ALJ was rejecting Dr. Thorpe's "gentle coworkers" restriction, the ALJ was obligated to provide either a specific and legitimate reason, or a clear and convincing reason, for doing so. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). However, the ALJ provided no reasons. If, on remand, the ALJ explicitly rejects this limitation, he must determine whether Dr. Thorpe's opinion was contradicted by other medical opinions and offer either clear and convincing or specific and legitimate reasons for rejecting the "gentle coworkers" restriction.

### B.   "Low-stress Environment"

Plaintiff also contends Social Security Ruling ("SSR") 85-15 required the ALJ to explain how the limitation of "frequent decision-making" accommodates Dr. Thorpe's recommendation that Plaintiff be restricted to a "low-stress environment." SSR 85-15 states "the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress jobs,'" and, as a result, "the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." SSR 85-15, available at 1985 WL 56857, *6. However, SSR 85-15 does not "set out any presumptive limitations for [stress and mental illness] disorders;" instead, it emphasizes "the importance of thoroughness in evaluation on an individualized basis." *Id.* at *5.

Consistent with the SSR 85-15 directive to perform an individualized and thorough review for each claimant, the ALJ in this case found Plaintiff's subsequent work history in housekeeping and retail positions affirmed Dr. Thorpe's opinion that Plaintiff be restricted to a low-stress work environment. AR 728. The ALJ then crafted a residual functional capacity which accounted for Plaintiff's limitations and demonstrated abilities, including her demonstrated decision-making abilities. AR 725-29. Restrictions in the degree of decision-making are commonly incorporated as a component of a "low-stress" work limitation. *Compare Williams v. Astrue*, 2012 WL 1570576, *5 (C.D. Ca. 2012) (defining "simple, routine, and repetitive tasks in a low stress environment" to mean "work requiring *no (i.e., rare)* decision making or judgment, no change in work setting, and not requiring any usual, very fast pace or production rate requirements.") (emphasis added), *with Roots v. Colvin*, 2014 WL 2893193 (E.D.

---

As the ALJ does not appear to have rejected this aspect of Dr. Thorpe's opinion, the Court need not decide whether clear and convincing reasons are required at this time.

Ca. 2014) (defining "simple, routine and repetitive tasks and low stress work" to mean only "*occasional* decision-making and no more than occasional changes in the work setting.") (emphasis added) *and Valdez v. Commissioner of Soc. Sec.*, 2012 WL 3776879, *4 (W.D. Mich. 2012) (noting the ALJ found the claimant could "only work a low stress job with no more than *frequent* decision making") (emphasis added). *See also Cisneros v. Colvin*, 2013 WL 5375490, *2 (E.D. Ca. 2013) ("And by low stress I mean not production pace and not requiring lots of decision making, you know, not in a decision making position."). Finally, the ALJ also gave great weight to the opinions of the State Agency Medical Consultants, who opined Plaintiff was not significantly limited in her ability to make simple work-related decisions. AR 524, 584. Accordingly, the ALJ's inclusion of "frequent decision-making" into the definition of "low-stress" in Plaintiff's RFC properly accommodated Dr. Thorpe's opinion limiting Plaintiff to a "low stress job environment."

Plaintiff also argues the Vocational Expert testified all of Plaintiff's past relevant work involved some level of stress, thus indicating the specific limitations articulated by Dr. Thorpe would render Plaintiff disabled. AR 791. Though the Vocational Expert testified all of Plaintiff's past relevant work involved some level of stress, the Vocational Expert did not testify Plaintiff was unable to work in a low-stress environment. AR 790-92.[5] Plaintiff's interpretation of the Vocational Expert's testimony does not demonstrate the ALJ erred in incorporating Dr. Thorpe's "low-stress environment" restriction into Plaintiff's RFC.

II.     Whether the ALJ Erred at Step Four and Step Five of the Sequential Evaluation

---

[5] The Vocational Expert did testify that an individual with a similar age, education, background, and experience as Plaintiff, who needed more than the normal and customary breaks, would likely be terminated from any job. AR 790-92. However, the record does not reflect, nor does Plaintiff explain, how additional breaks are a necessary component of a low-stress environment.

1    Plaintiff argues the ALJ's findings at Step Four and Step Five of the sequential evaluation
2 were not supported by substantial evidence. Specifically, Plaintiff contends the ALJ's RFC did
3 not properly consider all of Dr. Thorpe's stated limitations, and thus, the ALJ's findings that
4 Plaintiff could still perform her past relevant work and could perform other jobs existing in
5 substantial numbers in the national economy were invalid.
6    As discussed in Section I, the ALJ erred by failing to adequately explain the rationale for
7 translating the limitation of "gentle coworkers" to the RFC limitation of "occasional
8 collaborative tasks with coworkers" or otherwise provide any other support for this limitation.
9 AR 484, 725. Moreover, the ALJ nonetheless included the "occasional collaborative tasks with
10 coworkers" limitation as a component of the hypothetical questions to the Vocational Expert.
11 "The testimony of a vocational expert is valuable only to the extent that it is supported by
12 medical evidence. The vocational expert's opinion about a claimant's residual functional
13 capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the
14 record." *Magallanes*, 881 F.2d at 756 (internal citations omitted). Because the Vocational
15 Expert's testimony was predicated on hypothetical questions incorporating the unsupported
16 limitation discussed above, the Vocational Expert's testimony as to Plaintiff's ability to perform
17 her past relevant work or other work existing in substantial numbers in the national economy
18 lacked evidentiary value.

### **CONCLUSION**

20    Based on the above stated reasons and the relevant record, the undersigned finds the ALJ
21 erred in evaluating Plaintiff's residual functional capacity, and in evaluating Plaintiff's ability to
22 engage in past relevant work at Step Four or other work existing in substantial numbers in the
23 national economy at Step Five. Therefore, the court ORDERS this matter be REVERSED and
24

1  REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent
2  with this order. Judgment should be for PLAINTIFF and the case should be closed.
3        Dated this 30th day of September, 2015.

*/s/ David W. Christel*

David W. Christel
United States Magistrate Judge

ORDER ON PLAINTIFF'S COMPLAINT - 11